**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br>C.A. No. 1:24-cv-11807-ADB<br><br>BEN MORRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESS SOFTWARE CORPORATION; ERNST & YOUNG LLP; and BANK OF AMERICA CORPORATION,<br><br>Defendants. | [Leave to File Granted on April 21, 2026] |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED ERNST & YOUNG LLP / BANK OF AMERICA CORPORATION CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................2

I. History of the Litigation........................................................................................2

A. Procedural Posture ..............................................................................................4

B. Negotiation of the Proposed Settlement ...........................................................4

II. The Settlement Provides Significant Benefits to the Settlement Class...................6

A. The Proposed Settlement Benefits Plan .............................................................6

B. The Proposed Notice Plan...................................................................................7

C. Settlement Class Representative Service Award and Attorneys' Fees and Expenses.........................................................................................................8

D. Dismissal and Release of Claims .......................................................................9

ARGUMENT ..............................................................................................................9

I. The Court Should Preliminarily Approve the Proposed Class Action Settlement.................................................................................................9

A. The Proposed Settlement is Fair, Reasonable, and Adequate ....................10

B. The Settlement Satisfies the Preliminary Approval Factors ......................13

i. The Proposed Settlement is the Product of Good-Faith, Informed, Arm's-Length Negotiations..........................................13

ii. There Was Sufficient Informal Discovery to Inform Resolution ..............................................................................................14

iii. The Proponents of the Settlement are Highly Experienced in Data Breach Litigation...........................................................15

iv. Settlement Class Objections ......................................................16

II. The Proposed Settlement Benefits Plan is Fair, Reasonable, and Adequate..........17

III. The Proposed Settlement Class Meets the Requirements for Class Certification ........................................................................................18

A. The Requirements of RuleIN 23(a) are Satisfied.......................................19

i. Numerosity ........ 19

ii. Commonality ........ 19

iii. Typicality ........ 21

iv. Adequacy ........ 21

B. The Settlement Class Meets the Requirements of Rule 23(b) ........ 22

i. Common Issues Predominate Over Individual Issues ........ 23

ii. A Class Action is a Superior Device for Adjudicating the EY / BOA Action ........ 24

IV. The Court Should Approve the Proposed Notice Plan for Direct Notice to Be Issued to the Settlement Class ........ 26

V. The Court Should Set the Below Settlement Deadlines ........ 27

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**Cases**

*Abubaker v. Dominion Dental USA, Inc.*,
No. 119CV01050LMBMSN, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ............................ 21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 18, 22

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................................ 23

*Attias v. CareFirst, Inc.*,
346 F.R.D. 1 (D.D.C. 2024) ................................................................................................ 18

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) .......................................... 21

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................................................... 16

*Corra v. ACTS Ret. Servs., Inc.*,
No. CV 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) ..................................................... 24

*Engel v. Scully & Scully, Inc.*,
279 F.R.D. 117 (S.D.N.Y. 2011) .......................................................................................... 19

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.*,
541 F.3d 1 (1st Cir. 2008) ...................................................................................................... 9

*Fox v. Iowa Health Sys.*,
No. 3:18-cv-00327, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ........................................... 11

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ................................................................................................ 24

*Harbour v. California Health & Wellness Plan*,
No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) .................................. 12

*Hill v. State St. Corp.*,
No. 09-cv-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ....................................... 10, 17, 26

*Hochstadt v. Bos. Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ................................................................................ 14, 17

*In re Accellion, Inc. Data Breach Litig.*,
No. 5:21-CV-01155-EJD, 2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ................................ 18

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)........................................................................... 22, 25

*In re Cap. One Consumer Data Sec. Breach Litig.*,
No. 119MD2915AJTJFA, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022).......................... 12, 25

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
325 F.R.D. 529 (D. Mass. 2017)................................................................................... 23

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003)................................................................................ 26, 27

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-cv-1998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)............................................ 26

*In re Forefront Data Breach Litig.*,
No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023)............................................... 12

*In re Lupron Mktg. & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005)......................................................................................... 9

*In re Lupron Mktg. & Sales Pracs. Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004)..................................................................... 13, 16

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
270 F.R.D. 45 (D. Mass. 2010)........................................................................... 13, 15, 21

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008)................................................................................................ 19

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-MD-2503-DJC, 2018 WL 11293802 (D. Mass. Mar. 12, 2018) .................................. 10

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. CV 14-MD-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).......................... 22, 23, 25

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
538 F. Supp. 3d 208 (D. Mass. 2021)................................................................................ 18

*Lapan v. Dick's Sporting Goods, Inc.*,
No. 1:13-cv-11390, 2015 WL 8665204 (D. Mass. Dec. 11, 2015)........................................... 26

*Meaden v. HarborOne Bank*,
No. 23-CV-10467-AK, 2023 WL 3529762 (D. Mass. May 18, 2023) ................................ 10, 19

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
No. 3:15-cv-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) .................................... 13, 14

*New England Biolabs, Inc. v. Miller*,
No. 1:20-CV-11234-RGS, 2022 WL 20583575 (D. Mass. Oct. 26, 2022)......................... 13, 17

*Piro v. Exergen Corp.*,
No. 15-cv-11834, 2016 WL 1255630 (D. Mass. Mar. 29, 2016)............................................. 26

*Roberts v. Source for Pub. Data*,
No. 08-CV-04167-NKL, 2009 WL 3837502 (W.D. Mo. Nov. 17, 2009)................................ 25

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000)..................................................................................... 16

*Savidge v. Pharm-Save, Inc.*,
727 F. Supp. 3d 661 (W.D. Ky. 2024) ...................................................................... 18, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ............................................................................................... 23

*Wal-Mart Stores v. Dukes*,
564 U.S. 338 (2011)............................................................................................ 20, 23

**<u>Rules</u>**

Fed. R. Civ. P. 23.......................................................................................... 18, 26, 27

Fed. R. Civ. P. 23(a) .................................................................................... 18, 19

Fed. R. Civ. P. 23(a)(1) ................................................................................... 19

Fed. R. Civ. P. 23(a)(2) ................................................................................... 19

Fed. R. Civ. P. 23(a)(3) ................................................................................... 21

Fed. R. Civ. P. 23(a)(4) ..................................................................... 16, 21, 22, 25

Fed. R. Civ. P. 23(b)........................................................................................ 18, 22

Fed. R. Civ. P. 23(b)(3) ......................................................................... 18, 22, 23, 24, 25

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 26, 27

Fed. R. Civ. P. 23(e) ........................................................................................................ 1, 9

Fed. R. Civ. P. 23(g) ........................................................................................................ 16

# INTRODUCTION

Plaintiff Ben Morris ("Plaintiff" or "Settlement Class Representative"), individually and on behalf of all others similarly situated, and pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), respectfully moves this Court for preliminary approval of the proposed Class Action Settlement Agreement and Release ("Settlement" or "SAR") with Defendants Ernst & Young LLP ("EY") and Bank of America Corporation ("BOA") (collectively "Defendants").[1] Preliminary approval should be granted because the Settlement provides substantial relief for the Settlement Class, including the payment of $2.5 million by Defendants into a non-reversionary Settlement Fund to (1) be allocated to the Settlement Class according to the proposed Settlement Benefits Plan;[2] (2) pay for attorneys' fees and expenses and a Service Award to the Settlement Class Representative, as approved by the Court; and (3) cover the costs of settlement administration and the issuance of notice. According to the proposed Settlement Benefits Plan, the Net Settlement Fund (after deducting Court-approved attorneys' fees and expenses, any Court-approved Service Awards, and notice and administration costs) will be used to pay for Settlement Class Members' claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00.

As set forth below, the Settlement is fair, reasonable, and adequate, as it provides immediate and guaranteed relief in the face of difficult, extensive, and expensive litigation that

[1] Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the SAR, which is attached as Exhibit 1 to Declaration of Gary F. Lynch in Support of Plaintiff's Motion for Preliminary Approval ("Lynch Decl.") filed concurrently herewith.
[2] The proposed Settlement Benefits Plan is attached as Exhibit 2 to the Lynch Decl.

poses a significant risk that Plaintiff and the Settlement Class might recover nothing from Defendants should litigation continue. The Settlement is also the result of extensive and well informed negotiations among counsel with extensive experience in data breach litigation, facilitated by an experienced mediator, Hon. Diane M. Welsh (Ret.). For these reasons, Plaintiff respectfully requests that the Court preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, direct the Settlement Administrator to issue notice accordingly, and set Settlement-related deadlines.

## BACKGROUND

### I. History of the Litigation.

Plaintiff's claims against Defendants arise out of a security incident stemming from a vulnerability in MOVEit Transfer. *See*, *e.g.*, Compl., ¶ 19; ECF No. 908.[3] MOVEit Transfer is a subscription-based managed file transfer application developed and licensed by Progress Software Corporation ("Progress") and used by numerous commercial and government entities, including Defendants, to store and transfer large data files. *See* Compl., ¶ 19; ECF No. 908, ¶¶ 11–12. Between May 27, 2023 and May 31, 2023, CL0P Ransomware Gang, exploited a vulnerability in the MOVEit Transfer application. *See* ECF No. 908, ¶¶ 90–155. CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customers' MOVEit Transfer environments, and access, copy, and exfiltrate the sensitive information stored therein (the "Security Incident"). *See* ECF No. 908, ¶¶ 96–153. Shortly after exploiting the MOVEit Transfer vulnerability, CL0P threatened to name and publish the leaked data of any organizations that did not respond to its ransom demands. *See* ECF No. 908, ¶¶ 175–179, 207–208.

---

[3] Citations to "Compl." are citations to the Amended Class Action Complaint (ECF No. 1784) filed in this action.

On or about May 31, 2023, Progress informed EY of a recently discovered vulnerability in MOVEit Transfer.[4] Specifically, Progress warned of an unauthenticated SQL vulnerability that could allow unauthorized actors to escalate user privileges and access EY's MOVEit Transfer environment. Following Progress's notification, EY conducted an investigation and concluded that the PII of approximately 198,000 people had been taken from EY's MOVEit Transfer environment due to an exploit of the MOVEit vulnerability. The compromised Personally Identifying Information ("PII"), related to services provided by EY to BOA, including Personally Identifying Information ("PII") in documents provided by BOA to EY.

Although the Security Incident involved an exploit of the MOVEit Transfer application, Plaintiff alleges that Defendants' negligence contributed to the breach and theft of Plaintiff's and Settlement Class Members' PII. *See id.*, ¶¶ 59–60; ECF No. 908, ¶¶ 427–57. Defendants deny these allegations and any fault or liability in this matter. Among other defenses, Defendants argue that they cannot be negligent in using a trusted software product used by thousands of businesses and government entities worldwide. Plaintiff further alleges that Progress should have warned users, including Defendants, that MOVEit Transfer was "not set it and forget it" with respect to security, and that additional steps should have been taken to secure the data transferred with MOVEit Transfer. ECF No. 908, ¶¶ 458–466. Plaintiff alleges Defendants could have prevented or mitigated the Security Incident by implementing reasonable data security measures when exchanging PII via MOVEit Transfer. *See* Compl., ¶ 19; ECF No. 908, ¶¶ 427–31. Defendants deny these allegations.

[4] *Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/c43aee1c-dbc4-4a6d-b0d1-147ad3b23c37.shtml (last visited April 21, 2026).

### A. Procedural Posture.

Following the Security Incident, Plaintiff filed a class action complaint, *Morris v. Progress Software Corporation, et al*, Case No. 1:24-cv-11807 (D. Mass.), that was then coordinated with *In re: MOVEit Customer Data Sec. Breach Litig.*, MDL No. 1:23-md-03083-ADB, pending in the U.S. District Court for the District of Massachusetts before the Honorable Allison D. Burroughs.

After the appointment of Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs, the Court entered MDL Order No. 13 on April 25, 2024, which set deadlines for the parties to brief certain threshold issues in this MDL relating to Article III standing, arbitration, and jurisdiction under the Class Action Fairness Act. MDL Order No. 13. On July 23, 2024, all defendants in the MDL filed an omnibus motion to dismiss pursuant to Rule 12(b)(1), asserting that the underlying actions should be dismissed for lack of Article III standing. *See* ECF No. 1114. After briefing and argument by the parties, on December 12, 2024, the Court issued an opinion denying the defendants' omnibus motion to dismiss in large part finding that "(most) Plaintiffs have standing to pursue their claims." MDL Order No. 19 (as amended by MDL Order No. 32). During the pendency of the omnibus motion to dismiss briefing, Plaintiffs' Co-Lead Counsel and Defendants' Liaison Counsel negotiated a proposed structure for litigating claims asserted in the MDL, with the Court ordering Plaintiffs to file a consolidated bellwether complaint against Progress and certain other defendants. Plaintiffs later filed a bellwether complaint against Progress and other representative defendants. *See* ECF No. 1543. EY and BOA were not named as bellwether defendants.

### B. Negotiation of the Proposed Settlement.

At an early procedural phase of this MDL, Co-Lead Counsel, the Settlement Committee, and Defendants' counsel began discussing the possible resolution of the Litigation, which

culminated in the Parties participating in an arm's-length settlement negotiation on May 13, 2024.[5] *See* Lynch Decl., ¶ 13. During the settlement negotiations, the Parties reached an impasse and thereafter agreed to continue their settlement discussions via the mediation process. *Id.*, ¶ 14. Following the arm's-length settlement negotiation and the Court's order denying all defendants' 12(b)(1) motion in large part (MDL Order No. 19), the Parties then engaged in a full-day mediation session conducted on March 20, 2025 by the Honorable Diane M. Welsh (Ret.), a retired federal magistrate judge now with JAMS in Philadelphia, Pennsylvania. *Id.*, ¶¶ 15–17. In preparation for the mediation, the Parties engaged in informal discovery, wherein Defendants provided confidential information related to the issues in the lawsuit and the Settlement Class Representative. *See id.*, ¶ 16. Plaintiffs' Settlement Committee was therefore well informed regarding the facts of the case, and the strengths and weaknesses of the Litigation leading into the mediation. *Id.*

During the mediation, the Parties reached an agreement in principle regarding the material terms of a classwide settlement, which if approved by the Court, will resolve all claims against Defendants in the Litigation. Lynch Decl., ¶ 17. Thereafter, the Parties engaged in a series of further arm's-length negotiations resulting in the culmination of the Settlement Agreement. The finalized Settlement Agreement was fully executed as of April 14, 2026. *Id.* To effectuate the Settlement Agreement, Plaintiff later filed an Amended Complaint on April 17, 2026. ECF No. 1784.

[5] The May 13, 2024 settlement negotiation concerned *Jacobs v. Ernst & Young Investment Advisers LLP et al.*, No. 1:23-cv-13021-ADB (D. Mass.)—which was filed by a different plaintiff but raised similar allegations against EY and BOA and was coordinated with the *MOVEit* MDL. The *Jacobs* plaintiff voluntarily dismissed his lawsuit on July 2, 2024. *In re: MOVEit* MDL ECF No. 1027.

## II. The Settlement Provides Significant Benefits to the Settlement Class.

Under the Settlement Agreement, Defendants have agreed to pay $2.5 million into a non-reversionary Settlement Fund to resolve Plaintiff's and Settlement Class Members' claims against the Defendant Released Parties. *See* SAR, § 3.1. The Settlement Fund will pay for (1) costs of Notice and Settlement Administration; (2) any Court-approved Service Award for the Settlement Class Representative; (3) any Court-approved attorneys' fees and expenses; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement and the proposed Settlement Benefits Plan, as approved by the Court. *See id.*, § 3.2.

### A. The Proposed Settlement Benefits Plan.

The Settlement provides relief to those whose PII was allegedly compromised as a result of Defendants' use of MOVEit Transfer during the Security Incident. *See* SAR § 1.41 (defining the Settlement Class as "all living persons in the United States whose PII was included in the files affected by the Security Incident."); *see also id.*, § 1.37 (defining the Security Incident as "the MOVEit data security incident occurring in May 2023 that resulted from a vulnerability of Progress's MOVEit Transfer software, but for the purposes of this Agreement only to the extent in which it related to services provided by EY to BOA, including PII in documents provided by BOA to EY ").

The Settlement requires that the Net Settlement Fund (after deducting for notice and administration costs, the Settlement Class Representative's Service Award and attorneys' fees and expenses, as awarded and approved by the Court) be distributed via the Settlement Benefits Plan proposed by Class Counsel and the Settlement Committee. SAR § 3.2; Lynch Decl., Ex. 2. Pursuant to the Settlement Benefits Plan, Settlement Class Members can file claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary

losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00 (subject to *pro rata* reduction or increase based on total claim submission). Lynch Decl., Ex. 2 § 2.

To the extent the Net Settlement Fund is not exhausted by the payment of Approved Claims, the value of the Alternative Cash Payments will be increased *pro rata*, up to $1,000.00, or until the Net Settlement Fund is exhausted. Lynch Decl., Ex. 2 § 4(b). If the total value of Approved Claims exceeds the value of the Net Settlement Fund, the value of the cash payments will be decreased *pro rata* to the highest amount that will allow the Approved Claims to be paid using the Net Settlement Fund. *See id.,* § 4(a). If any funds remain one hundred and eighty (180) days after the Effective Date, any monies remaining in the Net Settlement Fund will be used to extend all Approved Claims for credit monitoring and identity theft protection services for as long as possible until the Net Settlement Fund is completely exhausted. *See id.*, § 4(c).

**B. The Proposed Notice Plan.**

The Settlement proposes a Notice Plan requiring direct notice to be e-mailed or, alternatively, mailed to each Settlement Class Member. The Settlement Administrator, RG/2 Claims Administration LLC ("RG/2"), will be responsible for issuing notice according to the Settlement's terms. Declaration of Jessie T. Montague ("RG/2 Decl.") (submitted concurrently with this brief), ¶ 2.

Under the Settlement, Defendants will provide a list of Settlement Class Members within ten (10) days after the entry of an order preliminarily approving the Settlement. *See* SAR § 9.1. RG/2 will undergo efforts to update the Settlement Class list to ensure addresses are accurate. *See id.,* § 9.2(b). RG/2 will send notice via e-mail where possible and via U.S. mail where no e-mail

has been provided. *See id.*, § 9.2(a). The notice will include information concerning: (1) the allegations asserted in the Litigation; (2) details of the Settlement's benefits; (3) how to file a claim; (4) how Settlement Class Members can exclude themselves from the Settlement or object to the Settlement; (5) how to access the Settlement Website; and (6) contact information to learn more about the Settlement or answer any questions about filing a claim, submitting an objection, or opting out. RG/2 Decl., ¶ 8. Additionally, RG/2 will create a Settlement Website that includes the Long Form Notice and other relevant case documents and send Settlement Class Members a reminder notice by e-mail before the end of the Claims Period. RG/2 Decl., ¶ 8; SAR §§ 9.2(c), 9.3.

The Notice Plan is consistent with other effective, court-approved settlement notice programs, including those involving other data breaches, and is the best notice practicable. Under the Notice Plan, the Parties expect virtually all Settlement Class Members to receive direct notice and will engage in other means if it becomes apparent that some Settlement Class Members have not received notice. *See id.*, § 9.2(a). Based on its extensive experience administering class action settlements, RG/2 believes the proposed notice is best practicable under the circumstances. *See* RG/2 Decl., ¶ 9.

### C. Settlement Class Representative Service Award and Attorneys' Fees and Expenses.

Under the Settlement, Co-Lead Counsel may move the Court for an award of attorneys' fees and expenses expressed as a percentage of the Settlement Fund and for payment of Service Award to Settlement Class Representative up to $2,500.00. *See* SAR §§ 6.1, 6.2. Any amount awarded by the Court for the Service Award and attorneys' fees and expenses will be paid from the Settlement Fund. *See id.*, §§ 6.1, 6.2. The Settlement is not contingent on the Court's approval

of the payment of any attorneys' fees or expenses or approval of the Service Award. *See id.*, §§ 6.1(b), 6.2(a).

**D. Dismissal and Release of Claims.**

Upon the Effective Date of the Settlement, the Plaintiff Released Parties shall be deemed to have released any and all liabilities, rights, claims, actions, causes of action, damages, penalties, costs, attorneys' fees, losses or demands, whether known or unknown, liquidated or unliquidated, existing or potential, suspected or unsuspected, legal, statutory, or equitable, based on contract, tort, or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties, or matters that were or reasonably could have been asserted against Defendant Released Parties related to BOA's provision of PII to EY that was compromised or potentially compromised in the Security Incident or to Defendants' conduct alleged in the operative Complaint. *See id.*, SAR §§ 1.16, 1.32, 1.36, 14.1. However, the Settlement does not release claim against Progress. *See id.*, § 1.16. These releases are described in the proposed Long Form Notice. *See* SAR, Ex. E.

## ARGUMENT

### I. The Court Should Preliminarily Approve the Proposed Class Action Settlement.

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal citation and quotations omitted); *see also In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."). Rule 23(e) provides that a proposed settlement in a class action must be approved by the court. *See* Fed. R. Civ. P. 23(e). "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and

adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023) (citation omitted). "The second step in the settlement approval process requires a fairness hearing, after which the court may give final approval of the proposed settlement agreement." *Id.* (citation omitted). In a court's preliminary evaluation of a proposed settlement, "the Court determines only whether the settlement has 'obvious deficiencies' or whether 'it is in the range of fair, reasonable, and adequate.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-MD-2503-DJC, 2018 WL 11293802, at *1 (D. Mass. Mar. 12, 2018) (citation omitted).

### A. The Proposed Settlement is Fair, Reasonable, and Adequate.

To preliminarily approve a class action settlement, the settlement must be "in the range of fair, reasonable, and adequate." *In re Solodyn*, 2018 WL 11293802, at *1. When evaluating whether the settlement is within the range of reasonableness, courts consider the settlement benefits "in light of the possible recovery in the litigation and the risks of litigation." *Hill v. State St. Corp.*, No. 09-cv-12146, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015). The settlement need not represent "the best possible recovery[,]" but the recovery must be weighed against "the strengths and weaknesses of the case" given "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment[.]" *Id.*

Here, the recovery is within the range of reasonableness given the complexities and risks of continued litigation, including the uncertainty of recovery against Defendants. The Security Incident resulted from the MOVEit vulnerability, which impacted hundreds of businesses and millions of individuals. Plaintiff contends that, had Defendants implemented reasonable data security measures, the breach may have been avoided. Defendants may convince a factfinder, however, that the scope of the data breach stemming from the MOVEit vulnerability suggests that



011175-35/3548950 V1

the vulnerability could not reasonably have been safeguarded against, that Defendants had implemented reasonable data security measures, or that the blame lies with Progress for defectively designing MOVEit Transfer with the vulnerability.

The complexity of this MDL further supports that the recovery is within the range of reasonableness. The EY / BOA Settlement resolves just one piece of the complex puzzle of related litigation arising out of the MOVEit data breach. Here, while the Court issued favorable rulings on the omnibus Rule 12(b)(1) motion (MDL Order No. 19) and later on the Rule 12(b)(6) motions filed by the Bellwether Defendants (MDL Order Nos. 22 & 23), had the Parties proceeded with litigation, Defendants would have likely argued that the Court's 12(b)(6) opinions are not applicable or instructive to the claims asserted against Defendants or Defendants likely would have raised additional arguments that the Court did not address during briefing on the Bellwether Defendants' Rule 12(b)(6) motions.

Plaintiff also faces risks inherent in all data breach actions. Here, Plaintiff would need to prevail on both liability and class certification to ensure his claims proceeded on a class-wide basis and to afford an opportunity for the Settlement Class to obtain any relief. *See Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). The Parties would likely face significant risk and costs from an expert battle concerning whether Defendants' data security was unreasonable and competing expert testimony on the viability of any class-wide damages models. In the face of a vigorous defense from Defendants, it is uncertain whether Plaintiff would prevail on critical issues such as establishing Defendants' duty and breach of duty, Plaintiff's injuries as a result of Defendants' breach, and the viability of class certification. If Plaintiff did not prevail on

any of these issues, he faced the risk of recovering nothing for themselves and the Settlement Class.

Given the risks and expense of continued litigation, including that Plaintiff and the Settlement Class might receive nothing, the Settlement provides relief and protections for the Settlement Class now and ensures some recovery against Defendants without releasing the remaining claims against Progress. The Settlement is designed to provide relief for the harms and potential harms caused by the Security Incident—time and expenses spent responding to the breach, reimbursement for any actual misuse of data, and measures to prevent the future risk that the stolen data will be used for fraud or identity theft. The Settlement provides relief for those data breach injuries by providing benefits for (1) reimbursement of ordinary out-of-pocket losses (including lost time spent responding to the Security Incident) due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement of extraordinary losses resulting from the misuse of data; (3) an alternative cash payment; and (4) credit monitoring for preventing or mitigating the risk of future harm. The Settlement is therefore well within the range of reasonableness, warranting notice to the Settlement Class and an opportunity to object or opt-out.

Courts frequently approve class action settlements in data breach actions like this one. *See, e.g.*, *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval to data breach settlement that provided credit monitoring, a cash payment, or a documented loss payment); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *2 (E.D. Wis. Mar. 22, 2023) (granting final approval to data breach settlement that provided credit monitoring, and reimbursement for documented losses and lost time); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that

allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services); *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083 (D. Mass.) (ECF Nos. 1432 & 1485) (granting final approval to settlement agreements against two of several relevant defendants that provided credit monitoring, and reimbursement for documented losses and lost time).

Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is within the range of reasonableness warranting preliminary approval.

### B. The Settlement Satisfies the Preliminary Approval Factors.

Courts in the First Circuit look to four factors to determine whether a proposed settlement is entitled to a presumption of fairness. These guidelines include whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (quoting *In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)). The fourth factor is more often relevant for purposes of final approval, after notice has been issued and class members have been given an opportunity to object to the proposed settlement. *In re Lupron*, 345 F. Supp. 2d at 137.

#### i. The Proposed Settlement is the Product of Good-Faith, Informed, Arm's-Length Negotiations.

The first factor considers whether the proposed Settlement "is the result of serious, informed arm's length negotiations" entitling the Settlement to a presumption of reasonableness. *New England Biolabs, Inc. v. Miller*, No. 1:20-CV-11234-RGS, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022). A settlement negotiated at arm's length is typically presumed reasonable. *See Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-cv-30024, 2020 WL 1495903, at

*4 (D. Mass. Mar. 27, 2020) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel.").

Here, the presumption of reasonableness applies because the Settlement was the result of arm's-length negotiations, including a formal mediation with an experienced mediator, Judge Welsh (Ret.), and after sufficient information had been exchanged to ensure the Parties could reasonably assess the Settlement. *See* Lynch Decl., ¶¶ 15–17. Specifically, on March 20, 2025, the Parties participated in settlement discussions mediated by Judge Welsh. *Id.*, ¶ 15. Counsel for Defendants and members of the Plaintiffs' Settlement Committee who participated in the mediation are knowledgeable and respected litigators with significant experience in complex cases, including data breach and data privacy litigation. *See id.*, ¶¶ 3–4. Prior to mediation, the Parties also exchanged extensive confidential information related to the issues in the lawsuit. *See id.*, ¶ 16.

The Parties, therefore, were fully informed and capable of assessing the reasonableness of any settlement. With that knowledge and experience, the parties engaged in a lengthy and hard-fought mediation before Judge Welsh, resulting in a settlement in principle. *Id.*, ¶ 16. Thereafter, the Parties continued to finalize the Settlement's specifics and entered into the finalized Class Action Settlement Agreement on April 14, 2026. *Id.*, ¶ 17.

**ii. There Was Sufficient Informal Discovery to Inform Resolution.**

In assessing the sufficiency and meaningfulness of discovery, the issue is not whether discovery has been completed, but rather that sufficient discovery has been conducted for the parties to make an intelligent judgment about settlement. *See Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Here, the Parties reached the proposed Settlement after an arm's-length settlement negotiation, briefing threshold issues related to Article III standing, along with engaging in a sufficiently adequate amount of informal discovery via the mediation process.

*See* Lynch Decl., ¶¶ 13–17. The information uncovered and reviewed by Co-Lead Counsel and Settlement Committee provided them with the information needed to objectively evaluate the strengths and weaknesses of the case. *Id.*, 16.

Additionally, Defendants' Security Incident is part of the larger MOVEit data breach that spawned hundreds of cases consolidated in the MDL. Co-Lead Counsel, who the Court appointed to manage the related actions in the MDL, has been informed by their investigations and litigation of those centralized actions. *Id.*, ¶¶ 5, 41. Co-Lead Counsel's and the Settlement Committee's experience representing Plaintiff and other data breach victims in the MDL provided further knowledge and background to guide their assessment of the reasonableness of the Settlement. *Id.*, ¶¶ 3–4, 41–42.

The information received from Defendants and obtained in overseeing all plaintiffs' claims in the MDL, along with Settlement Committee's experience litigating data breach actions, provided counsel with sufficient information to evaluate the strengths and weaknesses of the claims and defenses in this case, and to assess the reasonableness of the Settlement. *Id.*, ¶¶ 16, 40. Based on the information available to both Parties, their counsel's respective experience in data breach litigation generally, and their experience in the MDL specifically, both Parties believe the Settlement to be fair, reasonable, and adequate. *Id.*, ¶¶ 40–42. Because the Parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval. *M3 Power*, 270 F.R.D. at 63.

#### iii. The Proponents of the Settlement are Highly Experienced in Data Breach Litigation.

The third factor courts evaluate in determining whether to preliminarily approve a class action settlement is the opinion of experienced counsel. *See id.* at 62. Courts give significant weight to the judgment of experienced counsel who have engaged in arm's-length settlement negotiations.

*See*, *e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

Here, Co-Lead Counsel and the Settlement Committee appointed by the Court are experienced class action litigators with significant experience litigating data breach actions. *See*, *e.g.*, Lynch Decl., ¶¶ 3–5. Courts have recognized Co-Lead Counsel's and the Settlement Committee's experience in this area of law and have repeatedly adjudged Co-Lead Counsel and the Settlement Committee adequate under Rules 23(a)(4) and 23(g). *See id.* Co-Lead Counsel and the Settlement Committee have demonstrated throughout the Litigation that they are well versed in data breach and privacy law, and they have prosecuted this case and others in the MDL with vigor and commitment.

The Parties have considered the reasonableness of the Settlement in light of the risk of continued litigation, the relevant facts and law, and their experience litigating data breach actions. *Id.*, ¶¶ 40–42. Counsel for the Parties have concluded the Settlement is fair, reasonable, and adequate. This factor, therefore, supports preliminary approval.

**iv. Settlement Class Objections.**

The fourth factor considers the Plaintiff's and the Class's reaction to the Settlement. This factor is more relevant at final approval after notice has been issued and the Class has been given an opportunity to object to the proposed settlement. *See In re Lupron*, 345 F. Supp. 2d at 137.

## II. The Proposed Settlement Benefits Plan is Fair, Reasonable, and Adequate.

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, adequate, and reasonable. *See Bos. Sci. Corp.*, 708 F. Supp. at 109 (citation omitted). "A plan of allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *New England Biolabs*, 2022 WL 20583575, at *4. "A reasonable plan of allocation need not necessarily treat all class members equally, but may allocate funds based on the extent of class members' injuries and consider the relative strength and values of different categories of claims." *Hill*, 2015 WL 127728, at *11 (internal citations and quotations omitted). "In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel." *Id.*

Here, the proposed Settlement Benefits Plan meets this standard. It provides all Settlement Class Members with the same opportunity to file claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00 (subject to *pro rata* reduction or increase based on total claim submission). The Settlement Benefits Plan was designed to provide equal treatment to those who did not incur out of pocket losses while allowing for individualized compensation to Settlement Class Members who incurred expenses as a result of the Security Incident. The proposed Settlement Benefits Plan is similar to other court-approved allocation plans in other data breach cases. *See supra* at Argument I.A. For these reasons, the proposed Settlement Benefits Plan is fair, reasonable, and adequate and should be preliminarily approved.

**III. The Proposed Settlement Class Meets the Requirements for Class Certification.**

In preliminarily approving a class action settlement, the Court must "also determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted). Courts have repeatedly found data breach classes meet the class certification requirements. *See*, *e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661 (W.D. Ky. 2024); *In re Accellion, Inc. Data Breach Litig.*, No. 5:21-CV-01155-EJD, 2025 WL 2799102, at *15 (N.D. Cal. Sept. 30, 2025). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism … to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a settlement class, courts look to Rule 23. *See id.* at 620-21. Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *See* Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613. Additionally, the proposed class must meet one of the requirements of Rule 23(b). *See id.* Where, as here, a Rule 23(b)(3) damages class is proposed, plaintiffs must show "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally referred to as "predominance" and "superiority." Here, as described below, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

**A. The Requirements of Rule 23(a) are Satisfied.**

Rule 23(a) provides four prerequisites that any proposed class must meet. These prerequisites are (1) the class is so numerous that joinder of all members is impracticable (*i.e.*, "numerosity"); (2) there are questions of law or fact common to the class (*i.e.*, "commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (*i.e.*, "typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class (*i.e.*, "adequacy"). *See* Fed. R. Civ. P. 23(a)(1)–(4). The proposed Settlement Class meets all four Rule 23(a) requirements.

**i. Numerosity.**

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden*, 2023 WL 3529762, at *2 (citation omitted). Here, the Settlement Class is so numerous that joinder is impracticable. The Settlement Class consists of more than 198,000 individuals, far surpassing the threshold number of 40. Moreover, all Settlement Class Members have already been identified by Defendants during their investigation of the Security Incident and the issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127-28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members). Numerosity is met here.

**ii. Commonality.**

Under Rule 23(a)(2), the settlement class must share common questions of law or fact. The commonality requirement is not demanding. Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). Commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution – which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have a class-wide effect. To start, Plaintiff's and Settlement Class Members' PII were transferred between EY and BOA in the regular course of Defendants' business. As a result of the Security Incident and Defendants' use of the MOVEit Transfer software, each Settlement Class Member's PII was compromised by cybercriminals. Consequently, Plaintiff and Settlement Class Members all suffered similar injuries, including, *inter alia*: the risk of harm from the misuse of their data; the loss of privacy from cybercriminals compromising their PII; and out-of-pocket costs and lost time spent investigating the Security Incident and mitigating the risk of future misuse of their PII.

While only one common question is sufficient to satisfy commonality, here, Plaintiff's and Settlement Class Members' claims present numerous additional common issues, including but are not limited to the following:

- Whether Defendants owed Plaintiff and the Settlement Class a duty to reasonably secure their PII;
- Whether Defendants breached their duty by failing to implement and maintain adequate data security and failing to protect data transferred via MOVEit Transfer;
- Whether Defendants' breach of duty caused harm to Plaintiff and the Settlement Class, including the compromise of their PII;
- Whether Plaintiff and the Settlement Class suffered harm due to the compromise and potential misuse of their PII; and
- Whether Plaintiff's and Settlement Class Members' damages are reasonably quantifiable.

The existence of these common legal questions and the overwhelmingly similar factual issues presented by Settlement Class Members' claims satisfy commonality here.

**iii. Typicality.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *M3 Power*, 270 F.R.D. at 54. "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, Plaintiff's claims are typical of those of Settlement Class Members because they were all impacted by the same Security Incident—a data incident in which their PII was accessed by an unauthorized third party—and involve the same overarching legal theories, including theories that Defendants failed to safeguard their PII. *See Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to a data breach and were alleged to have suffered the same type of injuries). Plaintiff's legal theories do not conflict with those of absentee Settlement Class Members, and Plaintiff has and will continue to represent the interests of all Settlement Class Members fairly, because such interests parallel their own. As such, Rule 23(a)(3)'s typicality requirement is satisfied.

**iv. Adequacy.**

Rule 23(a)(4) requires that the proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *M3 Power*, 270 F.R.D. at 55.

Here, Plaintiff satisfies both requirements. First, Plaintiff's interests align with, and are not adverse or antagonistic to, those of Settlement Class Members. Plaintiff seeks to hold Defendants accountable for, among other things, their alleged failure to safeguard Plaintiff's and Settlement Class Members' PII. As such, Plaintiff seeks to hold Defendants accountable for the same alleged wrongdoing that caused the Settlement Class to suffer similar harm—the theft and risk of misuse of their PII. Plaintiff's interests therefore fully align with those of the Settlement Class. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309-11 (N.D. Cal. 2018) (finding the adequacy requirement satisfied where all class members had their personal information compromised in the data breach and generally sought the same relief).

Second, Co-Lead Counsel are qualified, experienced, and competent in complex litigation and have an established, successful track record in class litigation – including cases analogous to this one. *See* Lynch Decl., ¶¶ 3–4. Co-Lead Counsel and Plaintiff have diligently advanced the interests of the Settlement Class, including by investigating the Security Incident and resolving the cases against Defendants through Settlement. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B. The Settlement Class Meets the Requirements of Rule 23(b).

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. "The superiority inquiry [] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*

*(Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted). Here, the Settlement Class readily meets both requirements.

**i. Common Issues Predominate Over Individual Issues.**

A Rule 23(b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013). Predominance "does not require that each element of the claims [be] susceptible to class-wide proof" but only that "the individualized questions … [do] not 'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member would rely on common factual evidence to establish Defendants' liability. Each Settlement Class Member's claim centers on Defendants' allegedly inadequate data security and Defendants' use of MOVEit Transfer, which, Plaintiff alleges, Defendants knew or should have known could result in a data breach and harm to Plaintiff and the Settlement Class. Despite that knowledge, Plaintiff contends, Defendants knowingly used inadequate data security. Proof of those facts would establish Defendants' duty and breach of duty on a class-wide basis, and proof of those facts depends exclusively on Defendants' knowledge and actions. Thus, those elements of each Settlement Class Member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *Savidge*, 727 F. Supp. 3d at 707 (finding that whether



011175-35/3548950 V1

defendant owed a duty, breached a duty, and whether the breach of said duty caused injuries were predominating questions).

Additionally, common issues concerning causation and damages predominate. Whether Defendants' alleged misconduct, in part, caused the Security Incident and the resulting theft of Plaintiff's and Settlement Class Members' data will depend on common evidence comparing Progress's and Defendants' knowledge and acts and their contribution to the breach. Further, as other courts have recognized, Plaintiff can establish damages on a class-wide basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the breach. *See*, *e.g.*, *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889-90 (11th Cir. 2023) (approving plaintiffs' method for measuring class damages due to a data breach). Although each individual Settlement Class Member may have some individualized damages, those individual damages generally do not defeat class certification. *See Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *5 (E.D. Pa. Jan. 2, 2024) ("Although there may be slight differences among class members regarding degree of damages or the exact type of injury suffered (e.g., breach of sensitive financial information or breach of health data), none of these differences would preclude resolution on a class-wide basis."). For these reasons, predominance is satisfied.

**ii. A Class Action is a Superior Device for Adjudicating the EY / BOA Action.**

The superiority criterion requires that class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts consider (1) the interests of class members in individually litigating separate actions, (2) the extent and nature of existing litigation, (3) the desirability of concentrating the litigation of the claims in one forum, and (4) the difficulty of managing a class action. *See id.* "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time,

effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at *21 (citation omitted). Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted against Defendants. First, the potential damages suffered by the approximately 198,000 Settlement Class Members are relatively low dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. *See In re Anthem*, 327 F.R.D. at 315 (superiority satisfied in data breach settlement where the "the amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action."). Second, there is little doubt that resolving all Settlement Class Members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *See In re Cap. One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient).

For these reasons, the Settlement Class satisfies the requirements of Rules 23(a) and (b)(3), and Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of Settlement.

### IV. The Court Should Approve the Proposed Notice Plan for Direct Notice to Be Issued to the Settlement Class.

Upon preliminary approval and certification of a settlement class, Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hill*, 2015 WL 127728, at *14 (internal quotations omitted). "Robust efforts to reach as many class members as practically possible is required." *Piro v. Exergen Corp.*, No. 15-cv-11834, 2016 WL 1255630, at *6 (D. Mass. Mar. 29, 2016). Where possible, notice should be afforded to class members directly. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-cv-1998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) (holding that "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

Additionally, the notice must fully inform settlement class members about the action, the settlement and its benefits, each settlement class member's options to file a claim, opt out of the settlement, or object to it, and the means and deadline to take action. *See Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390, 2015 WL 8665204, at *3 (D. Mass. Dec. 11, 2015) (citing Fed. R. Civ. P. 23(c)(2)(B)); *Compact Disc*, 216 F.R.D. at 218–19 (approving a class notice that "described among other things, the class, the litigation, the proposed settlement, how an affected consumer could opt-out or object, and the funds for costs, attorney fees and incentive awards" and "directed individuals seeking additional information to a website address and provided counsel's address for mailing or delivering written comments").

Here, the Notice Plan satisfies the requirements of Rule 23 and due process. First, the Notice Plan calls for direct notice to Settlement Class Members. *See* RG/2 Decl., ¶ 8. Defendants have already identified Settlement Class Members when they investigated the Security Incident and issued notice of the breach. Under the Notice Plan, Defendants will provide contact information they have for Settlement Class Members to RG/2. *See* SAR, § 9.1. The Settlement Administrator will then use this information to issue notice directly via e-mail, or, if no e-mail is available, by U.S. mail. *See* RG/2 Decl., ¶ 8. This type of direct notice plan is the best practicable notice under Rule 23. *See* Fed. R. Civ. P. 23(c)(2)(B); *See* RG/2 Decl., ¶ 11.

Second, the notices contain sufficient information to apprise recipients of the Settlement, and of their right to submit a claim, opt out of the Settlement and Settlement Class, or object to the Settlement. *See Compact Disc*, 216 F.R.D. at 218–19. Specifically, the Long Form Notice describes the Settlement Class, the nature of the case, terms of the Settlement, notifies Settlement Class Members of their rights to submit a claim, opt out of the Settlement, or object to it, and provides Settlement Class Members with opportunities to obtain more information, including through the Settlement Website. *See* SAR, Exs. D & E (the Long Form Notice and Short Form Notice); *See* RG/2 Decl., ¶ 8.

## V. The Court Should Set the Below Settlement Deadlines.

To facilitate the implementation of the Settlement, the issuance of notice, and the opportunity for Settlement Class Members to submit a claim, opt out of the Settlement, or file an objection, the Court should issue an Order setting forth the below deadlines:

| **Event** | **Deadline** |
| --- | --- |
| Defendants Provide Class List to Settlement Administrator | 10 days following entry of this Order |
| Notice Deadline | TBD (60 days after Defendants' provision of the Class List to the Settlement Administrator) |
| Objection and Opt-Out Deadlines | TBD (60 days after Notice Deadline) |
| Claim Deadline | TBD (90 days after Notice Deadline) |
| Motion for Attorneys' Fees and Expenses and Service Award | TBD (21 days prior to the Objection and Opt-Out Deadlines) |
| Motion for Final Approval | TBD (30 days prior to the Final Approval Hearing) |
| Objections, if any, to Motion for Final Approval | TBD (17 days prior to the Final Approval Hearing) |
| Reply in Support of Motion for Final Approval | TBD (10 days prior to the Final Approval Hearing) |
| Final Approval Hearing | TBD (at least 150 days after Preliminary Approval) |

## CONCLUSION

For the reasons provided above, the Court should preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, and set the relevant Settlement deadlines.

Dated: April 22, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Daniel J. Kurowski
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
dank@hbsslaw.com
whitneys@hbsslaw.com

Kristen A. Johnson (BBO# 667261)
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
kristenj@hbsslaw.com

*Liaison & Coordinating Counsel*

By: /s/ E. Michelle Drake
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5933
Facsimile: (612) 584-4470
emdrake@bm.net

By: /s/ Gary F. Lynch
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
Gary@lcllp.com

By: /s/ Douglas J. McNamara
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
dmcnamara@cohenmilstein.com

By: /s/ Karen H. Riebel
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com

By: /s/ Charels E. Schaffer
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cshaffer@lfsblaw.com

*Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: April 22, 2026

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski